UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO.:

APOLLO GARDENS, LLLP,

    Plaintiff,

v.

MARIA HYLTON and
MEGAN MOSCOSO,

    Defendants,
_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Apollo Gardens, LLLP, (hereinafter "Apollo Gardens"), hereby sues Defendants, Maria Hylton and Megan Moscoso, (hereinafter "Hylton," "Moscoso" or Defendant(s)) and in support alleges as follows:

1. This Court has original jurisdiction pursuant to U.S.C. § 1331, 42 U.S.C. § 3613, because this lawsuit is brought under the Fair Housing Act, 42. U.S.C. § 3601 *et seq.*, and supplemental jurisdiction under 28 U.S.C. § 1291, over Plaintiff's claims under the Florida Fair Housing Act.

2. Venue is proper 28 U.S.C. § 1391(b) as this is the district in which the events giving rise to Plaintiff's claims occurred and where the subject property is located and where Defendants reside.

Apollo Gardens v. Hylton
Complaint for Damages and Injunctive Relief

## PARTIES

3. Plaintiff is a developer of affordable housing and an "aggrieved person" under 42 U.S.C. 3602 (i)(1)(2).

4. Plaintiff is an applicant to build affordable, multifamily housing in Titusville, Florida. The development will offer supportive services to the people who reside there, the vast majority of whom are people with disabilities.

5. The supportive services focus primarily on housing stability. Services are voluntary and may include coordination with primary and behavioral health providers, employment, education, financial literacy, community integration such as reconnecting with churches and synagogues, families, health and wellness, banking with a goal of community integration and reducing isolation. The purpose of the supportive services will be to help residents become more productive members of the community.

6. The proposed multifamily development is properly zoned and is a "permitted use" on the subject property at 2727 Demaret Drive, Titusville, FL 32780.

7. Defendants are neighborhood activists and opponents of the proposed housing development.

## FACTS

8. Defendants have participated in and lead a group of neighbors who have sought to interfere with, delay and derail the proposed housing development because

the housing development will serve and house people with disabilities, who are members of a protected class under the Fair Housing Act.

9. City of Titusville staff has repeatedly told Defendants and their neighbors that the proposed development is a "permitted use" and that the property is zoned for multifamily dwelling units.

10. Despite this, Defendants and their neighbors have targeted Plaintiff with an unrelenting campaign of opposition, interference, delay and coercion. As seen below, Defendants and their cohorts have announced that the neighborhood is not appropriate or welcoming for people with disabilities:



11. While the City of Titusville has not granted Apollo Gardens final approvals to start construction, Defendants and their neighbors have attended

various governmental meetings where they have made the following statements to deny housing to the people with disabilities who will live at Apollo Gardens. A reasonable listener would construe these statements as announcing to the public that the Royal Oaks neighborhood does not want people with disabilities in the neighborhood and that individual members might take discriminatory action against those who seek to house people with disabilities:

- Defendant Megan Moscoso on May 9, 2023: "…will serve high utilizers, by definition patients who impose a disproportionately high burden on the health care system due to their elevated resource use…the most common diagnosis for these adults will include schizophrenia, bipolar disorder and schizo-effective disorder and co-occurring use disorder…"

  "as a mother of a kindergartner and 3rd grader and a neighbor to many elderly neighbors and widows this project is of great concern…" *(See Link at 6 mins and 48 seconds)*

  https://www.youtube.com/watch?v=YvHxM4l7RWg&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=10

- Patricia Adomo on May 9, 2023: "…we are dealing with what psychologist label dual diagnosis patients' people who have mental illness as well as addiction…

  "…if someone is having a psychotic episode, how do we notify our neighbors that he is wandering through the neighborhood dangerous to the community…"

  "…the population is most likely to go off their legitimate medications and use street drugs so now we have another situation, we have a population who is behaviorally seeking drugs. Now we are going to have drug dealers coming into the neighborhood…that could include weapons, shootings... because we are dealing with a population that is notorious for drug seeking…"

"They don't belong in a community of homes; they belong in a location where they are not a danger to the population." *(See Link at 14 minutes and 07 seconds)*

https://www.youtube.com/watch?v=YvHxM4l7RWg&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=10

- Carl Jenkins on May 9, 2023: "I'm a correction deputy and I work with them 12 hours a day and I know how they are."

  "…they aren't doing any background checks on the residents so you can have a pedophile living right behind our house…"

  "Crime rate will go up…I have a 1- and 2-year-old, 9- and 15-year-old it will be hard for them to go outside and play basketball, play anything when you have these guys walking up and down the street." *(See Link at 16 minutes and 48 seconds)*

  https://www.youtube.com/watch?v=YvHxM4l7RWg&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=10

- Vicky Cockland (sp) May 9, 2023: "we have read a 132-page document submitted by Carrfour…that is where it described the kind of tenants that will be there…"

  "…no criminal backgrounds checks would be done so we kind of wonder are there going to be sexual predators, burglars, thefts, a history of assaults…."

  "…we are fearful" *(See Link at 31 minutes and 45 seconds)*

  https://www.youtube.com/watch?v=YvHxM4l7RWg&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=10

- Maria Hylton, May 23, 2023, City Council meeting: "Please stop using the term NIMBYism. we don't feel represented when you use this term…" *(See Link at 2 hours and 8 minutes)*

https://www.youtube.com/watch?v=25R0etn3nXo&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=9

- Cristian Moscoso May 23, 2023, City Council meeting (2nd meeting): "…I am here representing the Royal Oak residents."

    "'…the demographic they are seeking to serve are high utilizers of public behavioral health systems."

    "…high consumers of population comprised of substance abuse and mental health patients…is this truly a good location for the patients…"

    "…is our law enforcement prepared for the disruption that comes with this kind of program?"

    "I often work out of Starbucks, and I often see people with obvious mental health disabilities who also happen to be homeless, and they disrupt the location and often to the point that I have had to intervene myself in order to defend two young ladies that were in danger of being hurt" *(See Link at 17 minutes and 20 seconds)*

    https://www.youtube.com/watch?v=J6SmTMI54FU&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=8

- William Balint, May 23rd City Council meeting (2nd meeting): "I am here to state my objection to the proposal to construct Apollo Gardens… Does it make sense to place in the middle of a well-established residential community a treatment facility designed as "supportive housing" (used air quotes) for adults with serious mental illness and substance abuse? Residents would include drug addicts as young as 16 years old and people suffering from severe and potentially dangerous psychiatric disorders. Some very troubling unintended consequences could occur from having this marginalized population living next door to us. I will focus my objections on the inherent dangers presented by those residents addicted to narcotics… Adults will be at liberty to wander through our community without supervision that could lead to public drug use and intoxication, drug dealing, drug overdoses, increased criminal activity, home invasions, possible gun violence. Is this a fair

proposition to impose upon homeowners who in some cases have been paying property taxes for over 50 years?"

"As much as the presence of drug addicts would pose a threat to the safety of our community, so would the presence of those residents diagnosed with schizophrenia, bipolar and other severe psychotic disorders." *(See Link at 29 minutes and 27 seconds).*

https://www.youtube.com/watch?v=J6SmTMI54FU&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=8

- Penny Riley, May 23, 2023, City Council meeting (2nd meeting) "My concern with the Apollo Gardens situation is that we have young people moving to our neighborhood, people who want to have their forever home here…kids are going to be picking up needles…I am concerned about future generations and these children they are innocent... I would hate to see anything happen to those children because this situation is not resolved, and they were allowed to come into our neighborhood. Someone needs to rise up and fight against it. This is not right for Titusville. This is not the Titusville that I have learned to love for over 50 years." *(See Link at 1 hour and 14 minutes)*

  https://www.youtube.com/watch?v=J6SmTMI54FU&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=8

- Michael Dewyer, June 13, 2023, City Council meeting: "The problem I see with this Apollo Gardens project is it could cause a drop in property values, it can cause a lot of crime and possible drug use and a lot of problems…" "I feel like it is a super bad idea to put it in this area. We are in a nice small quiet community and it's going to turn into a big mess." *(See Link at 1 hour and 39 minutes)*

  https://www.youtube.com/watch?v=18lNMdJDC28&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=7

12. Again, according to the City of Titusville, Apollo Gardens is properly zoned as a multifamily housing development. The permitted uses are consistent with the zoning. But Defendants are not satisfied with allowing the project to go through

the government approval process because their objections are not valid and they know if they do not unjustifiably and unlawfully interfere, the project will be built. In inquiring what could be done after the project is constructed, Defendant Hylton was told that their one and only remedy after construction would be code enforcement violations if Plaintiff violates zoning or permissible uses. (Defendant Hylton's husband was advised of the same at the May 17, 2023, Planning and Zoning Commission meeting.)

https://www.youtube.com/watch?v=bCMsTsJEnno

13. To short circuit the process and interfere with and disrupt the development, Defendant Hylton, in coordination with Moscoso and their neighbors, filed a frivolous lawsuit in Circuit Court for the Eighteenth Judicial Circuit in and for Brevard County. *See* attached as *Exhibit A*. Defendant Hylton did not file the state lawsuit expecting it to prevail. Rather, she filed the lawsuit solely as a tool she could use to indefinitely delay the development until Plaintiff lost its allocated government funding. Defendant knows that she does not have to prevail in her frivolous state court action in order to achieve her and her cohorts' illegal objective of blocking the development and preventing disabled residents in her neighborhood. Defendant Hylton does not care if she loses the state court battle so long as she wins the war by interfering with Plaintiff's ability to keep government allocated funding; forcing Plaintiff to spend money on attorney fees and sending a message that when

it comes to living in her and her cohorts' neighborhood, people with disabilities need not apply. Defendant Hylton knew that her state court action was frivolous when she filed it. Her state court Complaint alleges, among other things, that Plaintiff's proposed multifamily housing project is actually a residential treatment facility and that the City Code does not permit residential treatment facilities on the subject property. Defendant made this allegation in the Complaint despite the fact that she admitted, at the June 13, 2023, City Council meeting, *(See Link below at 1 hour and 34 minutes),* "…the residential treatment facility, that one is really not a question for me because I don't think they meet that definition." After acknowledging that the development is not a residential treatment facility at the June 13, 2023, City Council Meeting, Defendant filed a state court Complaint alleging that Plaintiff is in fact a residential treatment facility and therefore does not have proper zoning to build the development. Defendant knew or should have known that her lawsuit was frivolous.

https://www.youtube.com/watch?v=18lNMdJDC28&list=PLU1aknF5k7J1StHbL95uYC06cT2_jW-v6&index=7

14. The state court case has significant issues because Plaintiff's site plan has not been approved, therefore the case may not be ripe for judicial determination. Furthermore, it's not clear from the state court pleadings that Defendant Hylton has standing in state court because she has not suffered an injury.

15. Even with unresolved questions regarding standing and ripeness, Defendant filed the lawsuit, in order to delay the approval process and to kill government allocated funding for Apollo Gardens. Defendant does not have to succeed on the merits of the lawsuit. Delay is enough to kill the project. She simply must delay the process for a period that will cause the project to be starved of needed funding to go forward. *See* deadlines attached as *Exhibit B.*

16. The lawsuit is nothing but a pretext for discrimination against people with disabilities. On May 17, 2023, at the Planning and Zoning meeting, Defendant Moscoso, a participant in the delay and deny tactics said, "We support affordable housing, but what they are proposing here is what we are questioning." Moscoso said the quiet part out loud and in public. Moscoso admitted that the neighborhood is okay with affordable housing. They are not okay with supportive housing for people with disabilities. That is what violates that Fair Housing Act.

17. The state lawsuit is a weapon that Defendant Hylton is using to unlawfully interfere with, and delay needed approvals for the project to go forward. Defendant's actions and those of her neighbors have been planned and coordinated to keep people with disabilities out of the neighborhood. Defendant is acting as the tip of the spear, but this is a whole-of-neighborhood effort. *See* attached *Exhibit C and Exhibit D.*

18. Defendant's actions described herein amount to disability discrimination in violation of the FHA and its implementing regulations at 24 C.F.R. Part 100. In passing the 1988 FHA amendments, which added robust protection for people with disabilities, Congress clearly pronounced a "[A] national commitment to end unnecessary exclusion of persons with [disabilities] from the American mainstream." H.R. Rep. No. 711, 100th Cong., 2d Sess.19 (1988) reprinted at 1988 U.S. Code Cong. & Admin, News 2173, 2179. Precisely such exclusion is at issue here.

19. Lack of accessible housing is one of the key barriers to the independence, integration, and fill citizenship for people with disabilities. The Royal Oaks neighborhood vitriolic discrimination on the basis of disability lies beneath the thinnest veneer of concern for the roadway, the type of zoning or the site plan. This type of community resistance to people with disabilities is often shrouded in pretextual "quality of neighborhood" concerns that are designed to exclude. Nonetheless, the FHA prohibits that resistance where, as here, it is designed to make housing unavailable because of a person's disability; becomes harassing, coercive, intimidating; interfering and indicates a preference with respect to the sale of a dwelling based on disability; or otherwise interferes with the enjoyment of rights guaranteed by federal law.

20. As a direct and proximate result of Defendants' discriminatory practices described above, Plaintiff has suffered and continues to suffer irreparable loss and injury, including economic loss, injury to reputation, humiliation, emotional distress, loss of housing opportunities, and deprivation of civil rights.

21. Defendants have attempted to mobilize many of their neighbors and Plaintiff's future neighbors against the development resulting in fear mongering and repeated hostile actions, including her lawsuit, against Defendants and the future residents of Apollo Gardens.

22. Defendants know that the future residents at Apollo Gardens will be people with disabilities, and solely because of this fact, Defendants have acted intentionally and willfully, with callous and reckless disregard for Plaintiff's statutory rights, thereby entitling Plaintiff to punitive damages so Defendants are punished for their conduct and deterred from engaging in other acts or making statements for the purpose of violating the Fair Housing Act.

23. Any other conditions precedent to the filing of this action have been satisfied or have been waived.

24. Plaintiff has retained J. Courtney Cunningham, PLLC., to represent them in this action and agreed to pay a reasonable fee for their services.

## COUNT I
## VIOLATION OF THE FAIR HOUSING ACT

**Apollo Gardens v. Hylton**
**Complaint for Damages and Injunctive Relief**

25. Plaintiff realleges and incorporates by reference all the allegations set forth in paragraph 1 - 24 above.

26. Plaintiff has engaged in an activity protected by the Fair Housing Act.

27. Defendants have interfered with that activity, or coerced, intimidated or threatened the Plaintiff.

28. Circumstantial and direct evidence indicates that Defendants' actions or statements were related to the protected activity. Such circumstantial evidence could include the sequence of events leading up to the interference or other context for the Defendant's actions.

WHEREFORE, Plaintiff, Apollo Gardens, LLLP, demands judgment against Defendants, Maria Hylton and Megan Moscoso, and any neighbors, owners, agents, or representatives, if any, acting in concert and agreement with Defendants' discriminatory actions, including entering a declaratory judgment, pursuant to Fed. R. Civ. P. 57, and respectfully request that this Court grant the following relief stating:

    a. That the Court enjoin Defendants, and any neighbors, owners, agents, or representatives, acting in concert and agreement with Defendants' discriminatory actions, violated the Fair Housing Amendments Act and the Florida Fair Housing Act by discriminating against persons with disabilities;

   b. That the Court enjoin Defendants, and any neighbors, owners, agents, or representatives, acting in concert and agreement with Defendants' discriminatory actions, and declare they have subjected Plaintiff to discrimination in violation of the Fair Housing Act and permanently,

   c. Enter declaratory judgment that the actions of Defendants, and any other owners, agents or representatives, if any, acting in concert and agreement with Defendants, are discriminatory against persons with disabilities and illegal under the FHAA.

   d. Preliminarily and permanently enjoin Defendants, and their agents, and successors, and all other persons in active concert or participation with Defendants, from further discrimination against people with disabilities in residential real estate transactions.

   e. Award actual and compensatory damages to compensate Plaintiff for economic losses and damages, and any other owners, agents or representatives, if any, acting in concert and agreement with Defendants, in an amount to be proven at trial;

   f. Grant Plaintiff an award of punitive damages and/or exemplary damages as a result of Defendants deliberate, intentional, overt, willful and flagrant discrimination, and any other owners, agents or representatives, if any,

**Apollo Gardens v. Hylton**
**Complaint for Damages and Injunctive Relief**

acting in concert and agreement with Defendants, in an amount that reflects the dual purposes of punishment and deterrence;

g. Grant Plaintiff an award of attorney fees, costs, and pre-judgment and post-judgment interest incurred in bringing this action; and

h. Grant such other and additional relief that the Court deems just and equitable under the circumstances.

**THE PLAINTIFFS DEMAND A JURY TRIAL FOR ALL SUCH ISSUES SO TRIABLE IN THIS MATTER**.

Respectfully submitted on September 12, 2023.

By: */s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
FBN: 628166
J. COURTNEY CUNNINGHAM, PLLC
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
T:  305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*